**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**TALLAHASSEE DIVISION**

AUTO DATA DIRECT, INC.,
a Florida for Profit Corporation,

Plaintiff,

     v.                             Case No.: 4:26-cv-39-AW-MAF

POSTR, LLC., a Foreign Limited Liability
Company, LEE PERINE, individually,
YOTTA AUTOMATED SOFTWARE
SOLUTIONS, INC., a Foreign For-Profit
Corporation, ROBERT RIEGER, individually,

Defendants.
_____/

### MOTION TO DISMISS SECOND AMENDED COMPLAINT AND INCORPORATED MEMORANDUM OF LAW

Defendants POSTR, LLC, LEE PERINE, YOTTA AUTOMATED

SOFTWARE SOLUTIONS, INC., and ROBERT RIEGER, by and through their

undersigned counsel hereby submit this Motion to Dismiss the Second Amended

Complaint pursuant to Rules 12(b)(6) and 9(b) of the Federal Rules of Civil

Procedure. Defendants ask this Court to dismiss Counts II through VI of the Second

Amended Complaint brought by Plaintiff AUTO DATA DIRECT, INC, for failure to

state a claim upon which relief can be granted and for failure to plead claims

sounding in fraud with the requisite particularity. Additionally, Defendants move to

strike all pleas for attorneys' fees where no entitlement exists. In support of their Motion, Defendants incorporate a memorandum of law and argue as follows.

## I.  PROCEDURAL POSTURE AND RELEVANT FACTS

Auto Data Direct ("ADD") filed the original Complaint in this matter on November 4, 2025, in the Second Judicial Circuit for Leon County Florida. On November 25, 2025, prior to serving the Complaint, ADD filed an Amended Complaint. Defendants accepted service on January 7, 2026, and removed the case to this Court. After removal, ADD filed its Second Amended Complaint ("SAC"), which is the current operative complaint in this matter.

According to the SAC, ADD's "primary business is to provide real time access to motor vehicle title, and lienholder data" pulled from state motor vehicle records. SAC ¶ 4. ADD has access to this data because of contracts it has entered into with 45 different states. *Id.* ADD serves "qualified companies under the Federal Driver's Privacy Protection Act (DPPA) that need automobile information to conduct daily business operations[,]"—businesses such as towing companies, car dealerships, and insurance companies, among others. SAC ¶¶ 12-14. Yotta Automated Service Solutions, Inc. ("YASSI") is engaged in the same business. SAC ¶¶ 9-10.

The SAC contains six counts: (I) breach of contract, (II) civil conspiracy, (III) violation of the Florida Uniform Trade Secrets Act (FUTSA), (IV) tortious interference with business relationships, (V) fraudulent misrepresentation, and (VI)

violation of the Florida Deceptive and Unfair Trade Practices Act (FDUTPA). The crux of ADD's grievance is that Mr. Perine, as principal of both Postr, LLC, and YASSI, subscribed for ADD's vehicle inquiry service (DMV123) for the purpose of conducting corporate espionage so that he and Mr. Rieger could reverse engineer DMV123, create their own competing company and product, and undercut ADD in the marketplace by charging a lower price for a "virtually identical" product. SAC ¶¶ 33-41.

The SAC has several fatal and incurable defects which warrant dismissal of Counts (II) through (VI). First, Plaintiff's tortious interference count (IV) must be dismissed because it fails to allege all the elements of a cause of action with requisite particularity. Second, Counts (II), (IV), (V), and (VI), for civil conspiracy, tortious interference, fraudulent misrepresentation, and FDUTPA violations, must be dismissed because they are preempted by FUTSA. The facts upon which these claims rest are materially indistinguishable from the facts supporting the FUTSA claim. Third, Count (III), for violations of FUTSA, must be dismissed because ADD has failed to sufficiently plead that it has a protectable trade secret under the law. Fourth, Count (VI), for violations of FDUTPA must be dismissed for failure to meet the heightened pleading standard and failure to allege consumer harm. Finally, several claims for attorneys' fees must be stricken or dismissed as there is no entitlement thereto.

## II.   LEGAL STANDARD - STATING A CLAIM

When reviewing a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a court "must accept as true all of the allegations contained in the complaint[.]" *Alfassi v. LVNV Funding, LLC*, No. 14–62537, 2015 WL 11198009, at *1 (S.D. Fla. Jan. 13, 2015). However, "although the complaint need not contain detailed factual allegations, the plaintiffs must provide the grounds for their entitlement to relief[.]" *Id*. "[T]his 'requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action.'" *Id*. (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

"The Court need not take allegations as true if they are merely 'threadbare recitals of a cause of action's elements, supported by mere conclusory statements.'" *W. Sur. Co. v. Steuerwald*, No. 16-61815, 2017 WL 5248499, at *2 (S.D. Fla. Jan. 17, 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A court considering a motion to dismiss may begin by identifying allegations that, because they are mere conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 664. "While legal conclusions can provide the complaint's framework, they must be supported by factual allegations." *Id*.

Additionally, cases which are based on allegations of fraud carry a heightened pleading standard. Federal Rule of Civil Procedure 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting

fraud or mistake." Fed. R. Civ. P. 9(b). "[T]his rule serves an important purpose, both in 'alerting defendants to the precise misconduct with which they are charged and protecting defendants against spurious charges of immoral and fraudulent behavior.'" *Omnipol, A.S. v. Multinational Defense Services, LLC*, 32 F.4th 1298, 1307 (11th Cir. 2022) (quoting *Ziemba v. Cascade Int'l., Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001)) (internal quotations omitted). In bringing claims of fraud, the pleader must "identify the who, what, when, where, and how of the fraud alleged." *Al Rushaid Petroleum Inv. Co. v. Siemens Energy Inc.*, 159 F.4th 887, 896 (11th Cir. 2025) (quoting *Omnipol*, 256 F. 3d at 1307).

"Failure to satisfy Rule 9(b) is a ground for dismissal of a complaint." *Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1012 (11th Cir. 2005); *Al Rushaid*, 159 F.4th at 901 (affirming dismissal for failure to plead with required specificity and clarifying that dismissal can be appropriate for failing to meet even one single 9(b) requirement).

## III.   ARGUMENT

### a.   <u>Plaintiff's Tortious Interference Claim (Count IV) fails.</u>

Plaintiff's SAC fails to state a claim for tortious interference with contractual and business relationships because Plaintiff does not plausibly allege the elements of this claim generally and fails to allege the requisite specificity under rule 9(b), Federal Rules of Civil Procedure. To prevail on a claim for tortious interference with

5

contractual and business relationship, a plaintiff must establish: (1) the existence of a business relationship or contract; (2) knowledge of the business relationship or contract on the part of the defendant; (3) an intentional and unjustified interference with the business relationship or the procurement of the contract's breach; and (4) damages to the plaintiff as a result of the interference. *Howard v. Murray*, 184 So. 3d 1155, 1166 (Fla. 1st DCA 2015). Additionally, because Plaintiff has alleged fraud in the tortious interference, the requirements of 9(b) apply. SAC ¶¶ 93-94 (alleging in both paragraphs that Defendants used fraudulent means to interfere with Plaintiff's business relationships); *Omnipol*, 256 F. 3d at 1307.

Plaintiff's SAC relies on repetitive, conclusory allegations, namely that Defendants "intentionally and unjustifiably interfered with [] business relationships" ADD has with unnamed third parties and that Defendants "marketed to induce and/or cause ADD's [unnamed] customers to stop using ADD's services[.]" (SAC ¶¶ 91-94). Plaintiff does not describe who they had business relationships with, what Defendants did to "market[] to induce" ADD's customers away from ADD, when Defendants interfered with those relationships, how ADD knew about those specific business relationships or how, specifically, ADD interfered. *Id*.

Plaintiff's deficient allegations are like the plaintiffs' dismissed claims in *Sekula v. Residential Credit Solutions, Inc.*, No. 6:15-cv-2104, 2016 WL 4272203, at *3 (M.D. Fla. Aug. 15, 2016). There, the plaintiffs alleged the defendants induced

the owner of their mortgage loans—an unidentified third-party lender/mortgagee/investor—to breach the mortgage agreement with the plaintiffs. *Id.* at *2. The court granted the defendants' motion to dismiss, noting that the plaintiffs' allegations did not "offer any explanation as to how the activities of the Defendants caused the (also unidentified) lender to commit that breach[.]" *Id. See also Duty Free Amers., Inc. v. Estee Lauder Cos., Inc.*, 797 F.3d 1248, 1281 (11th Cir. 2015) (bare allegations that defendant "encourag[ed] or induc[ed]" plaintiff's competitors to make misrepresentations that interfered with the plaintiff's business relationship were insufficient to state a claim for tortious interference); *Dynasty Mgmt., LLC v. UMG Recordings, Inc.*, 759 Fed. Appx. 784, 788-89 (11th Cir. 2018) (affirming dismissal of tortious interference claims where complaint offered only a "formulaic recitation" of elements, failed to allege with specificity that defendants knew of the contractual or business relationship, and did not show how defendants' conduct induced breach or otherwise caused interference).

Like the plaintiffs in *Sekula*, ADD does not "offer any explanation" as to how YASSI allegedly wrongfully induced Plaintiff's customers to change vendors. *Sekula*, 2016 WL 4272203 at *2. Its conclusory allegations of marketing to the public are insufficient to adequately allege interference, as is its vague allegations without identifying the customers affected. *See, e.g.*, *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So. 2d 812, 815 (Fla. 1994) (holding that tortious interference claim

must identify present or prospective customers rather than the community at large); *Coach Servs., Inc. v. 777 Lucky Accessories, Inc.*, 752 F. Supp. 2d 1271, 1273 (S.D. Fla. 2010) (holding that allegations of interference with business relationships with "[plaintiff's] customers" was "too vague and abstract" to make a claim for tortious interference.).

As such, Plaintiff's tortious interference claim should be dismissed for failure to state a cause of action.

### b. **Counts II, IV, Count V, and Count VI should be dismissed, as they are displaced/preempted by the Florida Uniform Trade Secrets Act.**

The Florida Uniform Trade Secret Act (FUTSA) explicitly preempts "conflicting tort, restitutory, and other law of this state providing civil remedies for misappropriation of a trade secret." §688.08, Fla. Stat. The law is very clear that FUTSA has broad preemptive effect when there are no material differences between the allegations supporting a FUTSA claim and those supporting tort and other claims. *See, e.g.*, *New Lenox Indus., Inc. v. Fenton*, 510 F. Supp. 2d 893, 908 (M.D. Fla. 2007) ("In order to pursue claims for additional tort causes of action where there are claims for misappropriation of a trade secret, there must be *material distinctions* between the allegations comprising the additional torts and the allegations supporting the FUTSA claim."); *Digiport, Inc. v. Foram Development BFC, LLC*, 314 So. 3d 550, 554 (Fla. 3d DCA 2020) ("Here, both the trade secret misappropriation claim and the misappropriation of a business idea count are

premised upon allegations that Digiport invested substantial time in creating a novel business idea, the idea was disclosed to Foram Group in confidence, reasonable measures to protect the secrecy were undertaken, and Foram Group misappropriated the idea by disclosing its plans to other companies for its own benefit. Thus, there are no material variations between the counts."); *Allegiance Healthcare Corp. v. Coleman*, 232 F. Supp. 2d 1329, 1336 (S.D. Fla. 2002) (finding preemption when both the trade secret claim and unfair competition claim were based on the same alleged wrong: the defendants' use of trade secrets that the individual defendant obtained during her employment with plaintiff); *Al Rushaid*, 159 F.4th at 898 (affirming dismissal of unfair competition claim for being insufficiently distinct from a trade secret claim).

Additionally, just as FUTSA displaces or preempts common law tort claims, it also displaces or preempts FDUTPA claims when they are based on the same factual allegations as the FUTSA claim. *See, e.g.*, *Freedom Mortgage Corp. v. Strong Home Mortgage, LLC*, No. 20-81721, 2020 WL 8642053, at *4 (S.D. Fla. Dec. 15, 2020) (holding that plaintiff's FUTSA claim preempted its FDUPTA because the claims were not materially distinct, even though the FDUPTA claim included additional allegations that defendant poached employees to access trade secrets).

FUTSA preemption applies even where "the information does not [ultimately] constitute a trade secret under the FUTSA." *American Registry, LLC v. Hanaw*, No.

2:13–cv–352, 2014 WL 12606501, at *3 (M.D. Fla. July 16, 2014); *see also Vape Fiends, Inc. v. Lightfire Grp., LLC*, No. 17-60951, 2017 WL 5953429, at *3-4 (S.D. Fla. Aug. 30, 2017) (dismissing tortious interference claim as preempted by FUTSA even where pled in the alternative based on "confidential" information).

In the instant case, the material allegations are the same. The FUTSA Count, along with all the other counts in the SAC, incorporates **all** the allegations in Paragraphs 1 through 42 of the SAC. As such, the FUTSA Count is premised upon the following material allegations: Defendants Perine and Postr made false representations for the purpose of gaining access to and using ADD's DMV123 software/system. (SAC ¶¶ 16-21, 38-41, 72). In accessing the DMV123 platform, Perine and Postr had access to how the platform functioned, including "search data retrieved, display and formatting for inquiries, pricing, and the ADD access procedures among other processes and data." (SAC ¶¶ 23, 33, 39, 40, 73-74, 76). Perine and Postr shared this information with the other Defendants. (SAC ¶¶ 26, 33, 34, 73-76). The Defendants then together reverse engineered their own product to compete with ADD's DMV123 product. (SAC ¶¶ 33-39, 73, 76-77, 80). ADD's SAC characterizes Defendants' product as "virtually identical" to, "replicating," and "duplicating" DMV123. (¶¶ 36, 37, 39, 73, 77). Finally, Defendants entered the market and began marketing and selling the "replicated product" to customers, including customers of ADD, as being "virtually identical." (¶¶ 14, 34, 36, 37, 40,

41, 80). A table which demonstrates virtually identical allegations supporting the FUTSA Count and Counts II and IV-VI is appended hereto as Table 1 to aid this Court's review of the allegations.

A comparison of the FUTSA allegations with the allegations in Count II, for civil conspiracy, reveals no material differences. Along with incorporating all the general allegations, this Count asserts that the Defendants fraudulently obtained access to DMV123 for the purpose of reverse engineering a virtually identical system (SAC ¶¶ 50-57, *see also* ¶¶ 16-21, 23, 33-41). These allegations are explicitly part of the FUTSA claim. (SAC ¶¶72-74). YASSI then allegedly marketed the reverse-engineered product to ADD's customers. (SAC ¶ 57, *see also* ¶¶ 14, 34, 36, 37, 40, 41). This allegation is explicitly part of the FUTSA claim. (SAC ¶¶ 73, 76-80).

Likewise, the same material allegations form the foundations for both Count IV for Tortious Interference and for the FUTSA claim. Along with incorporating all the general allegations, Count IV asserts that Defendants fraudulently accessed the system to obtain what ADD contends to be confidential information, "replicat[ed] and reverse engineer[ed] ADD's DMV 123 software/system . . . and then market[ed] to ADD's customers YASSI's misappropriated system as identical to ADD's[.]" (SAC ¶ 93, *see also* ¶¶ 23, 33-39, 40, 41). This allegation is explicitly part of the FUTSA claim. (SAC ¶¶ 72-77, 80).

Count V, for Fraudulent Misrepresentation, presents the same issues. Along with incorporating all the general allegations, Plaintiff asserts that Defendants made false statements to gain access to the DMV123 system (SAC ¶¶97-98, *see also* 16-21, 38-41) and that Defendants used the information they had gained through their access to create a virtually identical product to DMV123. (SAC ¶¶101, *see also* 23, 26, 33-39). These allegations are explicitly part of the FUTSA claim. (SAC ¶¶ 72, 73, 76, 77, 80).

Finally, Count VI for unfair competition in violation of the FDUTPA suffers the same infirmities. Once again, this Count incorporates all the general allegations and highlights that Defendants used misrepresentation to gain access to the DMV123 system (SAC ¶105, *see also* ¶¶ 16-21, 38-41) and marketed the product allegedly created from misappropriated trade secrets as being substantially identical to DMV123 (SAC ¶¶106-108, *see also* ¶¶ 23, 33-39, 40, 41). These same allegations are explicitly pled in the FUTSA claim. (SAC ¶¶ 72-77, 80).

The Motion to Dismiss stage is an appropriate time in which to make a preemption ruling. *See American Registry*, 2014 WL 12606501, at *5-6 (collecting cases and interpreting § 688.009 to require adherence to the majority view that, at the motion-to-dismiss stage, FUTSA "preempts all non-contract claims based on the misappropriation of confidential and/or commercially valuable information even if the information does not constitute a trade secret"); *K3 Enterprises, Inc. v. Sasowski*,

No. 20-24441-CIV, 2021 WL 8363506, at *9 (S.D. Fla. Nov. 22, 2021) (adopting "majority view" that FUTSA preempts *at the motion to dismiss stage* tort claims arising from misappropriation of trade secret information, and dismissing tortious interference claim) (emphasis added).

While a plaintiff may ordinarily be afforded an opportunity to remedy conclusory pleading deficiencies, such an opportunity should not be allowed when amendment is futile. *See, e.g.*, *In re Fundamental Long Term Care, Inc.*, 873 F.3d 1325, 1347 (11th Cir. 2017) ("a court generally does not abuse its discretion where future amendments would be futile"). Here, Plaintiff has made it clear that there are no material differences between and amongst the FUTSA claims and other counts addressed in this section, and any effort to re-plead to create artificial distinctions would require Plaintiff to contradict its earlier allegations. Accordingly, dismissal should be with prejudice. *See, e.g.*, *Measured Wealth Private Client Grp., LLC. v. Foster*, No. 20-cv-80148, 2020 WL 3963716 at *6-7 (S.D. Fla. July 13, 2020) (dismissing with prejudice claim for tortious interference with business relationship; claim preempted by FUTSA where alleged misconduct was insufficiently distinguishable from trade secret claims); *Surfaces, Inc. v. Point Blank Enterprises, Inc.*, No. 20-62648-CIV, 2022 WL 18956101, at *4 (S.D. Fla. Mar. 25, 2022) (dismissing with prejudice tort claims premised on misappropriation of trade secrets, as preempted by FUTSA); *Developmental Tech., LLC*

*v. Valmont Indus., Inc.*, No. 8:14–cv–2796; 2016 WL 7320908, at *6-7 (M.D. Fla. July 18, 2016) (same).

As such, it is appropriate for this Court to dismiss Counts II, IV, V, and VI from the Second Amended Complaint with prejudice as they are preempted by FUTSA.

> **c. Count III of the SAC, alleging violations of the Florida Uniform Trade Secrets Act (FUTSA), must be dismissed for failure to state a claim.**

To state a claim under FUTSA, "a plaintiff must allege that: (1) the plaintiff possessed secret information, (2) took reasonable steps to protect its secrecy, and (3) the secret it possessed was misappropriated, either by one who knew or had reason to know that the secret was improperly obtained or by one who used improper means to obtain it." *Poet Theatricals Marine, LLC v. Celebrity Cruises, Inc.*, 307 So.3d 927, 929 (Fla. 3d DCA 2020) (citing *Del Monte Fresh Produce Co. v. Dole Food Co., Inc.*, 136 F. Supp. 2d 1271, 1291 (S.D. Fla. 2001)).

The Florida Uniform Trade Secret Act (FUTSA) defines a trade secret as:

> [I]nformation, including a formula, pattern, compilation, program, device, method, technique, or process that:
> (a)   Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and
> (b)   Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

§688.002(4), Fla. Stat.

14

With respect to subsection (a) above, the law is clear that information that is "generally known" or "readily ascertainable by proper means" is excluded from FUTSA protection. *Health Care Management Consulting, Inc. v. McCombes*, 661 So. 2d 1223, 1226 (Fla 1st DCA 1995) (finding although the process for information management satisfied the definitional subject matter of a trade secret, the subject process that "principally involve[d] the interpretation of public Medicare records" failed the readily ascertainable by proper means prong because the principal information was available through researching the public Code of Federal Regulations).[1]

In the face of the relief that Plaintiff is seeking here—asking the Court to prevent YASSI from competing with ADD—the argument that the parties have contracted into trade secret protection is unavailing. If the subject matter of an agreement to restrain trade (i.e. a trade secret agreement) is not, in fact, a protectable trade secret, then a court must engage in a balancing test to determine the agreement's enforceability. *Lovell Farms, Inc. v. Levy*, 641 So. 2d 103, 105 (Fla. 3d

---

[1] *See also Sethscot Collection, Inc. v. Drbul*, 669 So. 2d 1076, 1078 (Fla. 3d DCA 1996) (finding a prospective customer list was not a protectable trade secret because "[t]his information was obtained from commercially available materials."); *Templeton v. Creative Loafing Tampa, Inc.*, 552 So. 2d 288 (Fla. 2d DCA 1989) (finding a customer list that could be derived from publicly available publications was not a protectable trade secret); *Sea Coast Fire, Inc. v. Triangle Fire, Inc.*, 170 So. 3d 804, 808 (Fla. 3d DCA 2014) (holding that trade secrets result from information "acquired or compiled through the owner's industry" rather than "just a compilation of information readily available to the public[.]").

DCA 1994). The balancing test weighs the public interest, potential effects on the signee, and the legitimate business interests of the signor. *Id*. (citing § 542.33(2)(a), Fla. Stat. (Supp.1990)).

Plaintiff's claim fails because it does not plead its claims with anything more than vague and conclusory allegations, which is contrary to the federal pleading requirements. Specifically, Plaintiff's alleged "trade secrets" do not qualify as such under the law because they are pled with inadequate specificity, are undermined by the allegations in the SAC, and/or they are not maintained confidentially.

1. *Plaintiff's "unique combination" of processes cannot be a trade secret based on the allegations in the SAC.*

Plaintiff fails to describe with requisite particularity the purported "unique" combination of processes which somehow render its reports a trade secret. The SAC makes it clear that the data which is the substance or material of its business comes from state government entities. ¶¶9, 20, 24. Moreover, it is clear from the images in the SAC that the reports DMV123 generates are merely a regurgitation of non-proprietary publicly available information obtained from state DMV agencies. Other than the bar code (addressed *infra*) and the logo for ADD, there is no allegation (nor can there be) that any of the information on the report originated from ADD's own industriousness—the information is merely accessed from the state DMVs and then delivered to the requester. Such a process is not a trade secret. *See, e.g.*, *Public Systems, Inc. v. Towry*, 587 So. 2d 969, 972 (Ala. 1991), *adopted by Health Care*

16

*Management Consulting*, 661 So. 2d at 1226 (finding a data program compiled from government information that was generally accessible to the public was not a protectable trade secret).

> 2. *Plaintiff's "real-time" access cannot be a trade secret based on the allegations of the SAC.*

Plaintiff fails to describe DMV123's streamlined, "real-time" processing function with reasonable particularity to provide enough detail to give fair notice and state a claim that is plausible on its face. *See, e.g.*, *Poet Theatricals*, 307 So. 3d at 929 (outlining the requirements for pleading a trade secret claim). Plaintiff asserts ADD, through DMV123, provides "fast, accurate, real-time access" to state DMV data. (SAC ¶ 12, 20). Plaintiff neither defines "real-time" nor alleges that this feature is due to its own proprietary labors rather than it just being the way that the data is provided from the state DMVs. Absent reasonable particularity as to the general function and economic value, time, and effort spent to develop DMV123's "real-time" processing, Plaintiff's assertions describe nothing materially different than a glorified courier which retrieves information from another source and provides it to a consumer. As such, the Plaintiff's allegations about its product's "real time" component does not withstand scrutiny as a trade secret.

> 3. *Plaintiff's inclusion of a "bar code" cannot be a trade secret based on the allegations of the SAC.*

Plaintiff's assertion that its use of a bar code is somehow a protectible trade secret also fails based on the allegations in the SAC. (SAC ¶ 36–34[2]). The law is clear that information loses trade secret protection when it becomes generally known to competitors in the industry, and "the fact that every competitor had discovered the same process might be relevant to establish that the information was 'generally known' and 'readily ascertainable' to competitors." *Bestechnologies, Inc. v. Trident Environmental System, Inc.*, 681 So.2d 1175, 1176 (Fla. 2d DCA 1996) (citing *Buckley v. Seymour*, 679 So. 2d 220 (Ala.1996)). Plaintiff fails to describe how a barcode and NMVTIS verification could possibly be unique to ADD considering the ubiquity of bar codes in the world today. Absent reasonable particularity as to any unique functions and economic value, time, and effort spent to develop DMV123's barcode and verification process, or how Plaintiff's barcode is somehow different than the billions of barcodes in use today, Plaintiff's assertions describe nothing materially different than a generic technological instrument which is pervasive across industries. Such a technology is undeniably generally known or readily ascertainable, thus undermining any trade secret claim.

    4. *Plaintiff's pricing cannot be a confidential trade secret based on the allegations of the SAC.*

---

[2] Plaintiff's SAC is misnumbered in that Paragraph 34 appears twice, once after Paragraph 33 and a second time between Paragraphs 36 and 37. The Paragraph 34 referenced in this citation is to the one that appears after Paragraph 36.

Plaintiff's assertion that DMV123's confidential consumer pricing is a protectable trade secret is a conclusory misstatement of the law and, thus, Plaintiff fails to state any actionable claim under section 688.002. Plaintiff asserts that DMV123's confidential consumer pricing is entitled to trade secret protection (SAC ¶ 20, 23, 33, 40). Yet, the allegations in the SAC belie that assertion: the SAC only alleges that Defendants had access to the pricing by virtue of their access to the DMV123 product—not that they hacked the DMV123 database to obtain pricing information. As such, this information is consumer-facing and not kept safe behind lock and key. The law is clear that price alone cannot fall within the definition of trade secret, nor can it benefit from protection. *Summitbridge Nat. Investments LLC v. 1221 Palm Harbor, L.L.C.,* 67 So. 3d 448, 450 (Fla. 2d DCA 2011) (detailing circumstances in which price is or is not a trade secret).

The type of information that is publicly disclosed to multiple consumers at the time of purchase fails both definitional elements of a trade secret because it becomes generally known and is the opposite of a reasonable precaution to maintain secrecy. *Lake Worth Surgical Center, Inc. v. Gates*, 266 So. 3d 198, 202–03 (Fla. 4th DCA 2019) (clarifying that not all business records are protectable by trade secret, including "the price for a single transaction."). Some pricing terms are confidential, but in transactions which are distinct from the ones in this case. For example, "Internal cost structure information" or other formulaic calculus that *results* in a

19

consumer-facing price may benefit from trade secret protection, especially if a letter of protection accompanies it, because that added level of detail could reveal the proprietary pricing development process and that process is not revealed to each consumer when they are considering a purchase. *Lewis Tree Service, Inc. v. Asplundh Tree Expert, LLC*, 311 So. 3d 206, 212 (Fla. 2d DCA 2020); *Lake Worth,* 266 So. 3d at 202 (citing *Gulfcoast Surgery Ctr., Inc. v. Fisher*, 107 So. 3d 493, 495 (Fla. 2d DCA 2013) and *Summitbridge*, 67 So. 3d at 450); *Columbia Hosp. (Palm Beaches) Ltd. Partnership v. Hasson*, 33 So. 3d 148, 149 (Fla. 4th DCA 2010) (clarifying the importance of letters of protection that prove pricing is confidential and not merely standardized).

Plaintiff mischaracterizes trade secret protection here because ADD's disclosure of standardized pricing information to all consumers with an ADD account defeats the principle that economic value is derived from its secrecy, as the price is inherently not a secret. In sum, Plaintiff's assertion that DMV123's confidential consumer pricing is a protectable trade secret is a conclusory misstatement of the law belied by the factual allegations in the SAC.

### d. <u>**The FDUTPA claim fails to meet the heightened pleading standard for claims sounding in fraud, and it fails to allege consumer harm.**</u>

Even if the Court were to decide that the FDUTPA claim, Count VI of the SAC, is not displaced or preempted by the FUTSA claim, the FDUTPA claim should still be dismissed for two additional, independent reasons. First, because the

FDUTPA claim sounds in fraud, the stricter pleading standard of Rule 9(b) applies, but ADD has failed to satisfy the pleading standard. Second, ADD fails to allege that Defendant's conduct will cause harm to consumers, a requisite for unfair competition claims under FDUTPA.

### 1. The FDUTPA claim fails to meet the heightened pleading standard that applies to claims "sounding in fraud."

Because the FDUTPA claim sounds in fraud,[3] the stricter pleading standard of Rule 9(b) should apply. *See, Muy v. Int'l Bus. Machines Corp.*, No. 4:19cv14-MW/CAS, 2020 WL 13470560, at *1 (N.D. Fla. Apr. 10, 2020) (noting split in caselaw but concluding that FDUTPA claim sounding in fraud should be required to meet the heightened pleading standard in Rule 9(b)); *cf. Compton v. General Motors LLC*, No. 1:19-cv-33-AW-GRJ, 2020 WL 13469725, at *3 (N.D. Fla. March 31, 2020) (Winsor, J.) (granting motion to dismiss FDUTPA claim without prejudice and noting that heightened pleading standard of Rule 9(b) would not apply to an amended claim "so long as he maintains a FDUTPA claim not sounding in fraud").

To satisfy the heightened pleading requirements under Rule 9(b), Fed. R. Civ. Proc., the plaintiff must identify the "who, what, when, where, and the how of the

---

[3] SAC, ¶¶ 106 (alleging defendants "misrepresented" to ADD customers that YASSI's program "looks, works and functions the same as ADD's real-time motor vehicle inquiry"); 107 (alleging defendants "misrepresented" to ADD customers that YASSI's product could be obtained at a lower price than ADD's product); 108 (alleging YASSI falsely advertised and misrepresented the manner in which the YASSI system compiles certain state's vehicle information).

fraud alleged." *Al Rushaid*, 159 F. 4th at 896. The requirements are satisfied so long as the complaint alleges "(1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." *Id*. (citations omitted).

Here, the SAC does not identify the who, what, when, where, and how requirements of the Rule for the alleged misrepresentations that form the basis for the FDUTPA claim. Paragraph 106 of the SAC alleges:

> 106. Furthermore, Defendants, jointly and acting in concert with a common goal and purpose, have *further* misrepresented to ADD's customers that the fraudulently created and virtually identical YASSI program looks, works, and functions the same as ADD's real-time motor vehicle inquiry, which provides to qualified companies under the DPPA the necessary and legally compliant automobile information in order to conduct daily business operations. (emphasis in original)

But ADD fails to plead *who* made the misrepresentations, lumping all defendants in together, *to whom* the misrepresentations were allegedly made, generically referring to "ADD's customers," *how* the alleged misrepresentations were made (orally, on a website, via marketing materials), *when* the misrepresentations were allegedly made, and why the alleged misrepresentations

22

were false or misleading. The same deficiencies exist for the alleged misrepresentations in paragraphs 107 and 108 of the SAC. There is no "who, what, when, where, and the how" of the fraud alleged.

Courts have noted Rule 9(b)'s heightened pleading requirement "serves an important purpose, both in alerting defendants to the precise misconduct with which they are charged and protecting defendants against spurious charges of immoral and fraudulent behavior." *Al Rushaid*, 159 F. 4th at 896 (quotations omitted). Here, Defendants cannot determine which of them is alleged to have made misrepresentations, what they allegedly said or wrote, to whom each statement was made, how it was false, when each statement was allegedly made, or what the Defendants allegedly obtained because of each misrepresentation. And it bears repeating that ADD is trying to shut down one of its biggest competitors using this lawsuit, and thus ADD's "spurious charges of immoral and fraudulent behavior" will impact not only the defendants, but also decision-making in the marketplace and the state agencies that contract with ADD and YASSI.

> 2. *The FDUTPA claim must be dismissed for failure to allege consumer harm.*

ADD is not presenting a traditional FDUTPA claim in the sense that it is not a consumer of any products of services sold by the Defendants. Instead, ADD is presenting an "unfair competition" claim against YASSI under FDUTPA. However, because FDUTPA is by its nature a consumer protection statute, in non-consumer

23

(competitor) cases the plaintiff must still plausibly allege that the defendant's actions cause harm to consumers, and failure to do so requires dismissal of the claim. *See CEMEX Constr. Materials Florida, LLC v. Armstrong World Indus., Inc.*, No. 3:16–cv–186, 2018 WL 905752, at *15 (M.D. Fla. Feb. 15, 2018) (dismissing FDUTPA count when business entity failed to plausibly allege the deceptive conduct was likely to cause consumer injury); *Caribbean Cruise Line, Inc. v. Better Bus. Bureau of Palm Beach County, Inc.*, 169 So. 3d 164, 169 (Fla. 4th DCA 2015) ("[W]hile the claimant would have to prove that there was an injury or detriment to consumers in order to satisfy all of the elements of a FDUTPA claim, the claimant does not have to be a consumer to bring the claim.").

Here, the SAC is devoid of any allegation that YASSI's alleged violations of FDUTPA have caused harm to consumers. On the contrary, taking the allegations of the SAC as true for purposes of a motion to dismiss, the SAC asserts that YASSI is providing a product (a DMV report on vehicles) that is "virtually identical" to ADD's product (SAC, ¶¶ 36, 39, 46, 57, 93, 101, 106), and offering it to consumers at a *lower* price than ADD charges (SAC, ¶¶ 37, 93, 107). While YASSI respectfully disagrees that its product is "virtually identical" to ADD's product (YASSI contends its product is different than and superior to ADD's product), it is hard to imagine how presenting consumers with a competitive product at a lower price will plausibly

24

cause harm to consumers. Because the SAC does not and cannot plausibly allege consumer harm, the FDUTPA claim should be dismissed.

### e. There is no basis for seeking recovery of attorneys' fees for Counts I, II, IV, or V.

Under Florida law, subject to very narrow exceptions not presented here, attorneys' fees are available only where authorized by contract or statute. *Confianca Mudancas E Transportes LTDA v. Confianca Moving, Inc.*, No. 09-21763-CIV, 2009 WL 10667442, at *2 (S.D. Fla. Dec. 23, 2009) (citing *Attorney's Title Ins. Fund, Inc. v. Landa-Posada*, 984 So. 2d 641, 643 (Fla. 3rd DCA 2008) ("Attorney's fees may only be awarded pursuant to statute or contract.")).

ADD requests the award of attorneys' fees in each of the six (6) counts in the SAC, but only two of those counts have any basis for recovery of fees: Count III under the FUTSA (§ 688.005, Fla. Stat.) and Count VI under FDUTPA (§ 501.2105, Fla. Stat.). Count I for breach of contract cannot support a claim for attorneys' fees because the contract documents filed by ADD in support of its claim do not provide for recovery of fees, and in fact those contracts provide for binding arbitration, stating that "EACH PARTY SHALL BEAR THEIR OWN COSTS (INCLUDING ARBITRATION COSTS) AND ATTORNEY'S FEES."[4]

---

[4] The SAC, at paragraph 15, refers to the contract documents as Exhibit A to the SAC, but ADD failed to attach the contracts to the SAC. However, the contract documents were attached as Exhibit A to the original complaint filed in State court

Similarly, courts have held that Florida claims for civil conspiracy do not support an award of attorneys' fees, and have granted motions to strike such requests. *Confianca Mudancas,* 2009 WL 10667442, at *2 (granting motion to strike request for attorneys' fees for civil conspiracy claim). Thus, there is no basis for recovery of attorneys' fees in Count II for civil conspiracy.

Counts IV and V are common law tort claims for tortious interference and fraudulent misrepresentation, and there is no basis for recovery of attorneys' fees for such claims. *Enter. Leasing Co. - S. Cent., LLC v. Heller*, No. 3:25cv999, 2025 WL 3535058, at *2 (N.D. Fla. Oct. 9, 2025) (granting motion to strike prayer for attorneys' fees for tortious interference claim noting "there was no contractual or statutory basis for such an award); *Confianca Mudancas*, 2009 WL 10667442, at *2 (granting motion to strike claim for attorneys' fees for fraudulent misrepresentation).

## IV.   CONCLUSION

In conclusion, this Court should dismiss Counts II through VI of the SAC for the reasons provided herein. Specifically: Counts II and IV-VI are preempted by FUTSA, Counts IV and VI are not pled with adequate specificity, and Count VI fails to allege consumer harm.  Additionally, Count III fails because ADD has failed to

---

which was included in the package of materials removed to this Court. See, ECF No. 1-1, at pp. 31-43. The quoted language is found at ECF No. 1-1, p. 39 of 95.

allege a trade secret which is protectable under the law. Finally, this Court should strike the pleas for attorneys' fees in Counts I, II, IV, and V.

Respectfully submitted this 3rd day of March, 2026.

> **STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.**
>
> */s/ Melanie R. Leitman*
> **Douglas Kilby, Esq.**
> Florida Bar No. 0073407
> **Melanie Leitman, Esq**.
> Florida Bar No.: 091523
> 106 East College Avenue, Ste. 700
> Tallahassee, Florida 32301
> Telephone: (850) 580-7200
> mleitman@stearnsweaver.com
> dkilby@stearnsweaver.com
> aruddock@stearnsweaver.com
> *Attorney for Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 3, 2026, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

> /s/ *Melanie R. Leitman*
> Melanie R. Leitman

27

**CERTIFICATE OF COMPLIANCE**

I HEREBY CERTIFY that the foregoing Motion and attached Table comply with Rule 7.1(F), Local Rules of the US District Court for the Northern District of Florida, because this document contains <u>6435</u> words, exclusive of case style, signature block, and any certificates.

<u>/s/ *Melanie R. Leitman*</u>
Melanie R. Leitman

**CERTIFICATE REGARDING CONFERRAL**

Because this Motion seeks disposition of the targeted claims, no conferral is required pursuant to Rule 7.1(D), Local Rules of the US District Court for the Northern District of Florida.

<u>/s/ *Melanie R. Leitman*</u>
Melanie R. Leitman