**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**TALLAHASSEE DIVISION**

AUTO DATA DIRECT, INC.,
a Florida for Profit Corporation,
Plaintiff,

      v.                                      Case No.: 4:26-cv-39-AW-MAF

POSTR, LLC., a Foreign Limited Liability
Company, LEE PERINE, individually,
YOTTA AUTOMATED SOFTWARE
SOLUTIONS, INC., a Foreign For-Profit
Corporation, ROBERT RIEGER, individually,
Defendants.
_____/

### REPLY IN SUPPORT OF DEFENDANTS'
### MOTION TO DISMISS SECOND AMENDED COMPLAINT

Defendants POSTR, LLC, LEE PERINE, YOTTA AUTOMATED

SOFTWARE SOLUTIONS, INC., and ROBERT RIEGER filed a Motion to Dismiss

the Second Amended Complaint filed by AUTO DATA DIRECT, INC. Dkt. 12.

Plaintiff filed an amended opposition to Defendants' Motion to Dismiss, Dkt. 19,

and Defendants sought leave to file a Reply, which this Court granted on April 10,

2026. Dkts. 20, 21. Defendants' Reply is as follows:

Defendants rest in large part on the arguments made in their Motion to Dismiss

with limited exception. Defendants are providing further clarification on a few

discrete issues in light of arguments raised by the Plaintiff in its Amended Response

which are not fully addressed by the underlying Motion to Dismiss.

1

## I.  Plaintiff has failed to adequately plead the business relationships allegedly affected by Defendants' actions.

Defendants argued in their Motion to Dismiss that ADD has failed to adequately plead the count of tortious interference because the Second Amended Complaint ("SAC") does not sufficiently identify the business relationship allegedly impacted by Defendants' actions. Plaintiff's response opposes the Defendants' argument but relies on cases which are distinguishable and inapposite to the circumstance pled here.

Plaintiff analogizes primarily to *Pediatric Nephrology Assoc of S. Fla. v. Variety Children's Hosp.*, 226 F. Supp. 3d 1346 (S.D. Fla. 2016) and distinguishes primarily from *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So. 2d 812 (Fla. 1995), in its assertion that it has adequately pled the existence of the business relationships subject to the alleged interference. The instant case, however, is fully distinguishable from *Pediatric Nephrology* and does not warrant this Court's reliance upon it in adjudicating the sufficiency of Plaintiff's tortious interference allegations.

In *Pediatric Nephrology*, "the business relationships at issue [were physicians'] professional relationships with other doctors practicing at the [plaintiff] Hospital." *Pediatric Nephrology*, 226 F. Supp. 3d at 1358. The business relationships identified were part of a defined set and thus the defendants understood their scope. In the instant case, the set of relationships is "**including but not limited to** ADD's

business relationships with specific and certain third-party insurance companies."

SAC ¶ 92 (emphasis added). The open-ended clause "including but not limited to"

expands the possible set of the relationships to be indefinably broad, up to and

including the public at large, which is insufficiently specific under *Georgetown*

*Manor*, 647 So. 2d at 815.[1] *See also Coach Servs., Inc. v. 777 Lucky Accessories,*

*Inc.*, 752 F. Supp. 2d 1271, 1273 (S.D. Fla. 2010) (holding that allegations of

interference with business relationships with "[plaintiff's] customers" was "too

vague and abstract" to make a claim for tortious interference.). Here, "specific and

certain third-party insurance companies" is not nearly as identifiable as the set of

relationships identified in *Pediatric Nephrology*. There are thousands of insurance

companies in the United States, so alleging relationships with "third-party insurance

companies" is closer to the set of relationships in *Georgetown* than in *Pediatric*

*Nephrology*.

As such, the Court should dismiss Plaintiff's tortious interference claim for

failure to sufficiently allege the business relationships at issue.

## II.    FUTSA Preemption Of Plaintiff's Tort And FDUTPA Claims Is Proper, And Not Premature.

---

[1] The *Georgetown Manor* court held that "no cause of action exists for tortious interference with a business's relationship to the community at large." 647 So. 2d at 815.

Plaintiff acknowledges that the Florida Uniform Trade Secret Act (FUTSA) expressly preempts claims sounding in tort and other Florida laws (such as FDUTPA) where those claims are based upon misappropriation of trade secrets, Dkt. 19, p. 10, but Plaintiff attempts to skirt preemption with two arguments. First, Plaintiff argues that preemption is premature, and that the Court should only consider preemption at the close of discovery and after ruling upon any motions for summary judgment on its FUTSA count. Second, Plaintiff asserts that its tort and FDUTPA claims are based upon allegations that go beyond misappropriation of trade secrets, and that preemption does not apply. With a limited exception, both of Plaintiff's arguments are wrong.

### A.     Preemption is not premature.

Plaintiff cites *Reynolds v. Wal-Mart Stores, Inc*., No. 4:14CV381-MW/CAS, 2015 WL 1879615, at *3 (N.D. Fla. Apr. 23, 2015) for the proposition that affirmative defenses such as preemption "will not usually support a motion to dismiss." Dkt. 19, p. 11. But Plaintiff omits the very next sentence from that opinion where the Court stated: "But there is an exception allowing dismissal under Rule 12(b)(6) when the affirmative defense 'clearly appears on the face of the complaint.' If the 'complaint itself demonstrates' that the claims are preempted then dismissal is proper.'" *Id*., quoting *Quiller v. Barclays Am./Credit, Inc.,* 727 F.2d 1067, 1069 (11th Cir.1984), *aff'd,* 764 F.2d 1400 (11th Cir.1985) (en banc). Here, the SAC itself

demonstrates that the tort claims (and part of the FDUTPA claim) are preempted, and thus dismissal is proper.

Plaintiff then cites a number of decisions where district courts held that, based upon the allegations in the complaints in those cases, a determination of preemption should wait until the courts have had an opportunity to determine whether the plaintiff's trade secret claims were viable, i.e. after the completion of discovery and rulings on summary judgment.  Dkt. 19, pp. 11, 12. "A majority of jurisdictions considering this issue have rejected plaintiff's argument." *Am. Registry, LLC v. Hanaw*, 2014 WL 12606501, at *5, 6 (M.D. Fla. July 16, 2014) (surveying rulings from multiple jurisdictions applying Uniform Trade Secret Act claims, noting the mandate in the FUTSA that the statute "be applied and construed to effectuate its general purpose to make uniform the law" governing trade secrets, and granting motion to dismiss as to tort claims based upon FUTSA preemption); *K3 Enters., Inc. v. Sasowski*, 2021 WL 8363506, at *9 (S.D. Fla. Nov. 22, 2021) (collecting cases and rejecting minority view); *Jouria v. CE Res., Inc.*, 2017 WL 3868422, at *5 (S.D. Fla. July 17, 2017) ("[Plaintiff] argues preemption is premature because the intentional interference claim may provide them with a cause of action if the Court finds that the misappropriated information does not qualify as a statutorily-defined 'trade secret' under FUTSA. In effect, [Plaintiff] is pleading the intentional interference claim in the alternative. This Court joins the majority of jurisdictions considering

5

this issue and rejects [Plaintiff's] argument."). Under the majority approach, widely adopted by courts in Florida, the courts examine the underlying factual allegations in each of the non-UTSA claims to determine if they are based on the "misappropriation" of information, and if so, those claims are displaced by the state's UTSA.

Notably, in several of the cases cited by Plaintiff, the courts held that preemption did not apply as the tort claims were materially distinct from the FUTSA claims, and thus their holding on prematurity is dicta. *See CHG Med. Staffing, Inc. v. Shafer*, 2024 WL 4881026, at *7 (S.D. Fla. Jul. 31, 2024) (declining to apply FUTSA preemption at motion to dismiss stage where tort claims were sufficiently distinct from the FUTSA claim so that preemption did not apply); *Congruex, LLC v. CCU, LLC*, 2026 WL 607613, at *7 (S.D. Fla. Mar. 4, 2026) (denying motion to dismiss tort claims based upon FUTSA preemption where tort claims alleged "wrongful acts separate and distinct from the Defendants' alleged misappropriation of the Plaintiff's trade secrets"). *Hernandez v. Stingray Group, Inc.*, 2025 WL 938516, at *2 (S.D. Fla. Mar. 28, 2025) (adopting recommended order to deny motion to dismiss unjust enrichment claim based upon FUTSA preemption "because the material facts underlying the non-trade secret claims are distinct from the FUTSA claims.").

6

The rejection of prematurity dovetails with preemption in cases such as this, where the tort claims and FUTSA claim overlap in all material respects. If the tort claims cannot exist independently of a finding of misappropriation, there can be no pleading in the alternative and disposing of the inadequate claims at the pleadings stage works no prejudice. Based on the facts pled in the SAC, ADD's fraudulent misrepresentation claim is not actionable without a finding of misappropriation because there would be no injury or detriment to ADD as a result of the purported misrepresentation. Similarly, without a finding of misappropriation, there is no conspiracy among the Defendants to misappropriate and thus the civil conspiracy claim collapses. And finally, without a finding of misappropriation, YASSI is just competing in the marketplace rather than tortiously interfering with ADD's customer relationships.

Plaintiff's argument that the Court should not consider FUTSA preemption until late in the case is in derogation of the plain language of section 688.008, Fla. Stat., and has been rejected by the majority of courts that have considered it. So too should this Court.

### B.    Plaintiff's non-FUTSA claims are not "materially distinct" from its FUTSA claim, with a partial exception.

Plaintiff next argues that FUTSA preemption should not apply because its non-FUTSA claims "allege wrongdoing beyond misappropriation of trade secrets alone." Dkt. 19, p. 13.  Plaintiff elaborates that "[e]ven though some of these [non-

FUTSA] claims might involve misappropriation of trade secrets, 'the core of these claims is *not* the misappropriation of trade secrets…but rather, Defendants' alleged *use* of the of the trade secrets…" *Id*., pp. 13-14 (emphasis in original, cleaned up). Plaintiff's argument misapprehends the meaning of the term "misappropriation" under FUTSA and fails to acknowledge the nature of the claims as pled.

The FUTSA provides that a plaintiff can obtain injunctive relief and damages based upon the "misappropriation" of the plaintiff's trade secrets. Sections 688.003, Fla. Stat. (providing for injunctive relief), 688.004 (damages). The term "misappropriation" is defined in FUTSA, and courts recognize that a party can misappropriate another's trade secret by either (i) acquisition, (ii) disclosure, or (iii) use. *Compulife Software Inc. v. Newman*, 959 F.3d 1288, 1311 (11th Cir. 2020) (citing section 688.002(2), Fla. Stat.).

As a result, Plaintiff's attempt to characterize its FUTSA claim as focused on "misappropriation of trade secrets," while the "core" of the non-FUTSA claims is Defendants' alleged "use" of those trade secrets, Dkt. 19, p. 13, is a false dichotomy, as an improper "use" of another's trade secrets is just one form of "misappropriation."

Moreover, Plaintiff's FUTSA claim clearly alleges all three forms of "misappropriation." For example, in paragraphs 38-40 of the SAC, which are incorporated into all counts, Plaintiff alleges Defendants ***acquired*** Plaintiff's trade

secrets by "fraudulently, improperly, and deceptively" obtaining access to Plaintiff's DMV123 software/system and pricing information, and ***used*** the stolen trade secrets to reverse engineer Defendant's competing system and product, and to unfairly compete in the marketplace. Dkt. 6, pp. 17-18. Additional allegations in Count III (FUTSA) clearly allege misappropriation by acquisition, use, and ***disclosure***. Dkt. 6, paragraphs 74 (alleging acquisition), 76 (alleging acquisition and use), 77 (acquisition and use), 80 (same), 81 (use and disclosure), and 83 (acquisition and disclosure). Thus, the FUTSA claim here is broadly asserted, and covers Defendants' "use" of the allegedly stolen trade secrets which Plaintiff asserts are at the "core" of its non-FUTSA claims.

In its Opposition at p. 19, Plaintiff attempts to show that the nature of the non-FUTSA claims is materially different from the nature of the FUTSA claim by quoting from paragraph 58 of the SAC, but in fact those allegations show the extent of overlap in the claims:

> The Defendants acted knowingly and in concert and aided and abetted each other in the overall scheme to *defraud ADD*, misappropriate ADD's trade secrets, *interfere with ADD's business relationships, and falsely advertise and misrepresent the YASSI competing product* as set forth in paragraphs 1-42 and within Counts III, IV, V, and VI."
> SAC, ¶ 58 (emphasis added).

With one exception, these allegations are clearly present in or incorporated into the FUTSA count:

9

- Scheme to "defraud ADD," *see* paragraphs 72 and 73 of the FUTSA claim (false and fraudulent means to obtain access to system), and paragraph 38 of general allegations;

- Scheme to "misappropriate ADD's trade secrets," *see* paragraphs 73 – 83 of the FUTSA claim (misappropriation of ADD secrets), and paragraph 31 of general allegations; and

- Scheme to "interfere with ADD's business relationship," *see* paragraphs 73 (compete) and 74 (identity of vendors) of the FUTSA claim, and paragraphs 37, 40, and 41 of general allegations.

That leaves only the allegation of a scheme to falsely advertise and misrepresent the YASSI competing product, which is addressed in the next section. Otherwise, the allegations in the SAC demonstrate that there is no material distinction between the FUTSA and non-FUTSA claims, and FUTSA preemption should apply.

C.    **Part of the FDUPTA claim is based upon allegations that are materially different from the FUTSA claim.**

The FDUTPA claim is based upon two different kinds of alleged wrongful conduct. First, Plaintiff alleges unfair competition as a result of Defendants using "unconscionable acts and practices to access the DMV123 software/system and virtually replicated (sic) ADD's product." Dkt. 6, ¶ 105. As discussed above, that

10

allegation forms a material part of the FUTSA claim, and the FDUTPA claim should be preempted to the extent it is based on that theory and allegation.

Second, Plaintiff alleges that Defendants "*further* misrepresented to ADD's customers" that YASSI's program "looks, works, and functions the same as ADD's real-time motor vehicle inquiry…" Dkt. 6, ¶ 105 (emphasis in original). Defendants concede that this theory, and this factual allegation, is materially distinct from the allegations supporting the FUTSA claim, and the FDUTPA claim should not be preempted as to this second theory and this distinct allegation. Defendants would note that Plaintiff appears to be talking out of both sides of its mouth on this point, though, as Plaintiff repeatedly asserts that the YASSI vehicle reports are "virtually identical" to Plaintiff's reports. Dkt. 6, ¶¶ 36, 37, 39, 46, 57, and 101. While contradictory allegations are not a basis for dismissal at the pleadings stage, they can certainly create issues for a plaintiff later in the proceedings.

## III.    Conclusion

Based on the arguments raised in Defendants' Motion to Dismiss and herein, this Court should dismiss Counts II through VI of the Complaint. Specifically: Counts II and IV-VI are preempted by FUTSA, Counts IV and VI are not pled with adequate specificity, and Count VI fails at least in part as detailed herein. Additionally, Count III fails because ADD has failed to allege a trade secret which

is protectable under the law. Finally, as Plaintiff has conceded, this Court should strike the pleas for attorneys' fees in Counts I, II, IV, and V.

Respectfully submitted this 23rd day of April, 2026.

**STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.**

/s/ *Melanie R. Leitman*
**Douglas Kilby, Esq.**
Florida Bar No. 0073407
**Melanie Leitman, Esq**.
Florida Bar No.: 091523
106 East College Avenue, Ste. 700
Tallahassee, Florida 32301
Telephone: (850) 580-7200
mleitman@stearnsweaver.com
dkilby@stearnsweaver.com
aruddock@stearnsweaver.com
*Attorney for Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 23, 2026, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

/s/ *Melanie R. Leitman*
Melanie R. Leitman

12

**<u>CERTIFICATE OF COMPLIANCE</u>**

I HEREBY CERTIFY that the foregoing Motion complies with Rule 7.1(F),

Local Rules of the US District Court for the Northern District of Florida, because

this document contains <u>2399</u> words, exclusive of case style, signature block, and any

certificates.

<u>/s/ *Melanie R. Leitman*</u>
Melanie R. Leitman

#14638542 v4