**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

**AUTO DATA DIRECT, INC.,**

    **Plaintiff,**

**v.**                                  **Case No. 4:26-cv-39-AW-MAF**

**POSTR, LLC, et al.,**

    **Defendants.**

_____/

## ORDER GRANTING IN PART MOTION TO DISMISS

After learning a competitor's product looked nearly identical to its own, Auto Data Direct did some digging. According to the operative complaint (the second amended), ADD learned Lee Perine, its competitor's co-founder, had recently used ADD's service. To obtain access, Perine had used a sham company and concealed his true motives. ADD contends Perine, along with the other Defendants, accessed its service on false pretenses, reverse-engineered its product, and now pass off an identical service as their own creation.

ADD sued for, among other things, breach of contract and trade-secret misappropriation. Defendants move to dismiss Counts Two through Six. (They do not challenge the Count One breach-of-contract claim.) Because some of ADD's claims are not supported by well-pleaded facts, this order grants Defendants' motion in part.

1

Case 4:26-cv-00039-AW-MAF   Document 28   Filed 07/20/26   Page 2 of 14

## I.

To avoid a Rule 12(b)(6) dismissal, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (marks omitted). Courts accept well-pleaded facts as true but reject conclusory allegations or "formulaic recitations." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1293-94 (11th Cir. 2010).

## II.

Car dealers, banks, insurers, and others rely on accurate driver and automobile records to run their businesses, but accessing these records can be difficult. There is the federal Driver's Privacy Protection Act, which restricts access to these records. And there are 50 sets of state agencies, databases, and regulations governing access. Companies therefore encounter a cumbersome process to access these records.

ADD operates a program called DMV123 that simplifies this process and provides real-time record access to qualified companies. With a single search, subscribers can instantly retrieve up-to-date title and lienholder data from most states. To ensure compliance with federal and state privacy laws, ADD vets each of its subscribers. A company seeking access must submit various documents and complete a user registration form indicating under which DPPA exemption the company and user qualify. Even after ADD approves a company as a subscriber, that

2

company must, with each search, indicate a qualified purpose under the DPPA for its search. (For example, insurance underwriting or recall notices.)

In January 2022, Lee Perine subscribed to the service with his company, Postr, LLC. Perine falsely represented Postr was a California tag renewal agency. In the short time it was a subscriber (less than 12 months), it submitted only 20 inquiries. This was an exceptionally small number for a real tag renewal agency. By November 2022, Postr terminated its ADD account. Perine reported it had gone out of business.

As it turned out, Perine ran another company, Yotta Automated Software Solutions Inc. (YASSI, for short), that hoped to operate a business like ADD's and to target the same types of customers. Like ADD, YASSI provided real-time access to driver and motor vehicle records to qualified companies.

In 2023, ADD noticed YASSI's search interface appeared nearly identical to its own. Both search interfaces had a bar code, a verification system, title and lienholder information, and vehicle data. After investigating Perine's DMV123 account, ADD learned Postr's inquiries related to Perine and his affiliates—YASSI executives, including YASSI CEO Robert Rieger—and not bona fide tag renewal customers.

### III.

ADD sued Lee Perine, Robert Rieger, Postr, and YASSI in state court. Defendants removed based on diversity. *See* ECF No. 1. And this court has

jurisdiction because there is complete diversity and more than $75,000 at issue. *See* ECF No. 1-2 (noting Postr LLC's sole member is a Californian); ECF No. 1-3 (noting YASSI is California citizen); ECF No. 1 (noting ADD is a Florida citizen and that the remaining individual Defendants are California citizens). After removal, ADD filed its second amended complaint, ECF No. 6, which is now operative.

ADD asserts six claims. As noted above, Count One, which Defendants' motion does not challenge, alleges breach of contract. ECF No. 6 ¶¶ 43-47. Count Two alleges civil conspiracy against all Defendants based on their alleged scheme to access DMV123 on false pretenses, misappropriate trade secrets, interfere with ADD's business relationships, and falsely advertise their own product. *Id.* ¶¶ 48-59. Count Three alleges a violation of Florida's Uniform Trade Secret Act based on Defendants' alleged misappropriation of ADD's trade secrets. *Id.* ¶¶ 60-89. Count Four alleges tortious interference with business relationships based on Defendants' alleged "replicating and reverse engineering" ADD's service and marketing the service to ADD customers. *Id.* ¶¶ 90-95. Count Five alleges fraudulent misrepresentation based on Defendants' alleged accessing DMV123 on false pretenses. *Id.* ¶¶ 96-102. And Count Six asserts a claim under Florida's Deceptive and Unfair Trade Practices Act (FDUTPA) for both reverse engineering DMV123 and misleading ADD customers about YASSI's abilities. *Id.* ¶¶ 103-11.

**A.**

Much of Defendants' argument turns on the Florida Uniform Trade Secrets Act. Defendants contend the Act preempts the claims in Counts Two, Four, Five, and Six. And they contend Count Three—which arises directly under the Act—lacks sufficient allegations to plausibly allege the existence of a trade secret.

The Florida Uniform Trade Secret Act allows trade-secret owners to recover damages for misappropriation. *See* Fla. Stat. § 688.001 *et seq.* A trade secret, for these purposes, is information that derives independent value from its secrecy and that the owner makes reasonable efforts to maintain as secret. *Id.* § 688.002(4). Misappropriation includes improper acquisition, disclosure, or use of a trade secret. *Id.* § 688.002(2); *see also Compulife Software Inc. v. Newman*, 959 F.3d 1288, 1311 (11th Cir. 2020) (citing statute).

The Act expressly preempts certain other claims. With some exceptions not relevant here, it "displace[s] conflicting tort, restitutory, and other law of this state providing civil remedies for misappropriation of a trade secret." Fla. Stat. § 688.008. "[A]s a general rule, 'other torts involving the same underlying factual allegations as a claim for trade secret misappropriation will be preempted by FUTSA.'" *Taubenfeld v. Lasko*, 324 So. 3d 529, 542 (Fla. 4th DCA 2021) (quoting *New Lenox Indus., Inc. v. Fenton*, 510 F. Supp. 2d 893, 908 (M.D. Fla. 2007)).

Operating on the presumption that ADD's search interface does not amount to a cognizable trade secret, Defendants argue that "FUTSA preemption applies even where 'the information does not ultimately constitute a trade secret under the FUTSA.'" ECF No. 12 at 9-10 (alteration adopted).[1] The issue for Defendants is that their preemption argument does not comport with FUTSA's text. FUTSA displaces claims "for misappropriation of a trade secret," and it describes what constitutes a "trade secret." *See* Fla. Stat. § 688.002 (defining "[t]rade secret" as it is "used in ss. 688.001-688.009"). As I conclude below, ADD has not pleaded facts suggesting its search interface meets the statutory definition of "trade secret." That conclusion necessarily means ADD's remaining claims are not for misappropriation of "a trade

---

[1] The parties seem to undertake the same preemption exercise *New Lenox* sets out—by comparing allegations between a pleaded FUTSA claim and a pleaded common law claim. ECF No. 12 at 11 (arguing preemption based on "[a] comparison of the FUTSA allegations [and] the allegations in Count II, for civil conspiracy"); ECF No. 19 at 13-15 (hinging preemption analysis on the manner in which ADD pleaded its (unpreempted) statutory FUTSA claim). But that approach misunderstands preemption. The statute preempts conflicting claims even in the absence of any coexisting FUTSA claim. A plaintiff asserting only a common-law tort claim relating to trade-secret misappropriation, for example, could not evade a preemption argument by pointing out he does not also assert a FUTSA claim. Thus, in *Taubenfeld*, the Fourth DCA applied FUTSA's preemption provision, noting the statute preempted claims "to the extent [plaintiff's common law claim] encompasse[d] a claim for misappropriation of trade secrets," even though the plaintiff brought no FUTSA claim. 324 So. 3d at 535, 543. The complete inquiry thus asks whether, notwithstanding other claims in the complaint, a putatively preempted claim involves "the same underlying factual allegations as *a* claim for trade secret misappropriation" would involve. *Id.* at 542 (emphasis added) (quoting *New Lenox Indus., Inc.*, 510 F. Supp. 2d at 908).

secret," meaning FUTSA does not displace them. *Page v. Deutsche Bank Tr. Co. Americas*, 308 So. 3d 953, 958 (Fla. 2020) (reiterating the "one, cardinal canon of construction before all others—that is, we presume that a legislature says in a statute what it means and means in a statute what it says there" (cleaned up)).

*American Registry*, a nonbinding case on which Defendants rely, hangs its contrary conclusion on out-of-circuit authority, coupled with FUTSA's uniformity mandate. *See Am. Registry, LLC v. Hanaw*, 2014 WL 12606501, at *5-6 (M.D. Fla. July 16, 2014) (noting FUTSA's uniformity provision which mandates the statute "'be applied and construed to effectuate its general purpose to make uniform the law with respect to the subject of this act among states enacting it'" (quoting Fla. Stat. § 688.009)). The majority of jurisdictions, *American Registry* concludes, have interpreted the Uniform Trade Secrets Act to "abolish all free-standing alternative causes of action" for misuse of confidential information "falling short of trade secret status." *Id.* In pursuit of uniform construction, *American Registry* adopted that reading too.

But there are two issues with this. One, Florida courts do not pursue uniformity at the expense of cardinal rules of statutory construction, even if the statute calls for "uniform" construction among the states enacting it. *See Nat'l Auto Serv. Ctrs., Inc. v. F/R 550, LLC*, 192 So. 3d 498, 507 n.8 (Fla. 2d DCA 2016) ("Even if the trial court's holding did further uniformity in interpretation of the Uniform

7

Act, however, furtherance of that broad purpose . . . cannot contravene the unambiguous language the legislature actually adopted."). Two, it is not all that clear that adopting *American Registry*'s reading promotes uniformity. *See, e.g.*, *Coe v. DNOW LP*, 718 S.W. 3d 338, 370 n.28 (Tex. App. Ct. 2025) (citing Arizona's, Arkansas's, Kansas's, Oklahoma's, and Wisconsin's highest courts, which reject *American Registry*'s view in favor of a "plain language approach"). The bottom line is that FUTSA's preemption provision reaches only statutorily defined trade secrets. Because (as next explained) ADD has not sufficiently alleged that its search interface constitutes a trade secret, its common law and FDUTPA claims relying on the interface are not preempted.

The statutory trade-secret claim fails because it does not plausibly describe a cognizable trade secret. As ADD correctly notes, whether information constitutes a trade secret is generally a question of fact. But contrary to ADD's argument, ECF No. 19 at 18-19, that does not mean the issue cannot be resolved on a motion to dismiss. ADD had an obligation to plead sufficient facts to plausibly show the existence of a trade secret. Plausibility "calls for enough facts to raise a reasonable expectation that discovery will reveal evidence" supporting a claim and its elements. *Am. Dental Ass'n*, 605 F.3d at 1289 (cleaned up).[2]

---

[2] *Twombly* and *Iqbal*'s plausibility standard replaced *Conley*'s no-set-of-facts standard, making ADD's reliance on *Coleman*—which applied the outdated *Conley*

As trade secrets, ADD points to DMV123's search data, "display and formatting for inquiries, pricing, and the ADD access procedures among other processes and data" that Defendants acquired when they, like other subscribers, signed up for and used DMV123. ECF No. 6 ¶ 23. But ADD's allegation that it works with (and thus provides the same information to) "towing companies, automobile dealers, automobile tag agencies, government entities, attorneys, financial institutions and insurance companies" belies its suggestion of secrecy. ECF No. 6 ¶ 14; *cf. Compulife*, 959 F.3d at 1313-14 (contrasting, in the Florida trade-secret context, publicly available outputs of a database from "the database as a whole"). ADD says it nonetheless maintained its service's secrecy through "its Terms of Use and its User Registration," but those provisions prohibit reverse-engineering the software. *See* ECF No. 1-1 at 37 (prohibiting resale of service or derivative works). With respect to the features Defendants accessed—like display, formatting, and price—ADD points to no provision suggesting those were subject to a user's strict confidence.[3] *Cf. Liberty Am. Ins. Grp., Inc. v. WestPoint Underwriters, LLC*, 199 F. Supp. 2d 1271, 1302 n.22 (M.D. Fla. 2001) (finding reasonable efforts

---

standard—misplaced. ECF No. 19 at 19; *see also Am. Dental Ass'n*, 605 F.3d at 1288.

[3] Trade secret law generally draws a line between reverse-engineering and strict confidence. Tellingly, "a breach of a duty to maintain secrecy, or espionage" can constitute misappropriation, but "reverse engineering" ordinarily does not. *Compulife Software*, 959 F.3d at 1311-12 (construing FUTSA).

of secrecy where plaintiff required "employees with access to the software to sign confidentiality agreements"); *Yellowfin Yachts, Inc. v. Barker Boatworks, LLC*, 898 F.3d 1279, 1299-1300 (11th Cir. 2018) (noting party failed to reasonably protect trade secret information where, among other things, it failed to execute confidentiality agreement). ADD has not plausibly alleged its end user product is "the subject of efforts that are reasonable under the circumstances to maintain its secrecy." Fla. Stat. § 688.002(4)(b).

Because ADD has not plausibly pleaded a cognizable trade secret, Defendants are entitled to dismissal of the statutory trade-secret claim. But because ADD's search interface does not amount to a cognizable trade secret, ADD's remaining common law and statutory claims based on the interface are not claims for misappropriation of a trade secret. ADD's civil conspiracy, tortious interference, fraudulent misrepresentation, and FDUTPA claims are thus not preempted. The trade-secret claim will be dismissed with leave to amend.

### B.

Next is tortious interference. To state a claim for tortious interference with a business relationship, ADD had to plausibly allege Defendants knew of its business relationships and unjustifiably interfered with them. *Swope Rodante, P.A. v. Harmon*, 85 So. 3d 508, 509 (Fla. 2d DCA 2012). ADD also had to allege damages. *Id.*

10

The issue for ADD is that it provides fleeting allegations concerning the scope of the business relationships at issue. ADD insists that, like the physicians in *Pediatric Nephrology Associates of South Florida*, it need not provide too much specificity, as its customers are "specific and certain third-party insurance companies." ECF No. 19 at 5-6; *see also Pediatric Nephrology Associates of South Florida v. Variety Children's Hospital*, 226 F. Supp. 3d 1346, 1358 (S.D. Fla. 2016) ("Plaintiffs have identified that the business relationships at issue are Dr. Cepero and Dr. Paredes' professional relationships with other doctors practicing at the [h]ospital.").

But ADD asks too much of *Pediatric Nephrology*'s nonbinding holding. A cognizable business relationship requires "a relationship with a particular party, and not just a relationship with the general business community." *Dunn v. Air Line Pilots Ass'n*, 193 F.3d 1185, 1191 (11th Cir. 1999) (citing *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So. 2d 812, 815 (Fla. 1994)). So, for example, it is insufficient when pilots contend a trade publication interferes with their "ability to sell their labor to the general [commercial airline] community." *Id.*[4] Here too, ADD's relationships

---

[4] Although ADD contends *Ethan Allen* is distinguishable because it involved the "public at large" and not "specific, qualified companies," ECF No. 19 at 6-7, *Dunn* suggests the proper inquiry is whether the claim plausibly alleges something more than a general *business* community. That makes sense, given the issue in *Dunn* involved pilots selling their labor to commercial airlines, and *Ethan Allen* involved a furniture company selling furniture to consumers.

extend beyond the kind of discrete group of local physicians in *Pediatric Nephrology*. Instead, as it elsewhere contends, Defendants' interference extends to the set of relationships "including but not limited to" ADD's relationships with "specific and certain third-party insurance companies." ECF No. 6 ¶ 92. As outlined above, that broad escape hatch encompasses "towing companies, automobile dealers, automobile tag agencies, government entities, attorneys, financial institutions and insurance companies," and amounts to Defendants' interference with ADD's general business community as opposed to some discrete, identifiable relationships.

That is not to say ADD cannot recover for a broad interference campaign. But it must supply factual allegations plausibly establishing particular relationships as opposed to a general community. ADD's tortious-interference claim will be dismissed with leave to amend.

## C.

Last is the Florida Deceptive and Unfair Trade Practices Act claim. To state a FDUTPA claim, a plaintiff must allege "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *Pop v. LuliFama.com LLC*, 145 F.4th 1285, 1295 n.9 (11th Cir. 2025) (quoting *City First Mortg. Corp. v. Barton*, 988 So. 2d 82, 86 (Fla. 4th DCA 2008)). A deceptive act or unfair practice is one that is likely to mislead or injure consumers. *Caribbean Cruise Line, Inc. v. Better Bus. Bureau of*

*Palm Beach Cnty., Inc.*, 169 So. 3d 164, 169 (Fla. 4th DCA 2015). So "to satisfy all of the elements of a FDUTPA claim," a plaintiff must allege "injury or detriment to consumers," even if the plaintiff is not a consumer himself. *Id.* Here, the gist of ADD's FDUTPA claim is that Defendants falsely advertise their service as always "real-time," when, in reality, certain state databases make real time impossible. ECF No. 6 ¶¶ 106-08; ECF No. 19 at 29-30.

Defendants first contend that ADD must satisfy Rule 9(b)'s heightened pleading standard for claims sounding in fraud. *See* Fed. R. Civ. P. 9(b). A claim sounds in fraud when its allegations "closely track the elements of common law fraud." *Pop*, 145 F.4th at 1294. Those elements include "a false representation of material fact made by one who knew that it was false, made to one who did not know it was false, with intent to deceive such person and to influence his action, which did deceive such person and influence his action to damage." *Id.* at 1294-95 (cleaned up). In response, ADD argues that its FDUTPA claim does not substantively track the elements of common law fraud. *See Lendinara v. Swedish Match N. Am., LLC*, 2025 WL 3699694, at *3 (S.D. Fla. Dec. 15, 2025) (concluding allegations did not track elements of common law fraud where they were "not necessarily premised on intentional deception but instead on the consumer's experience with the product").

But I need not decide the Rule 9(b) issue because, as Defendants correctly explain, ADD has not plausibly alleged consumer harm. Although it argues that,

13

"[b]y misrepresenting YASSI's reports from all state agencies are 'real time,' YASSI's customers are making important decisions with insufficient information and don't even know it," and that "these entities are paying for a product that they would not have purchased but for these misrepresentations," ECF No. 19 at 30, those contentions appear nowhere in the second amended complaint. And ADD has not pointed to anything in the complaint that would suggest there was consumer harm. The FDUTPA claim will thus be dismissed with leave to amend.

CONCLUSION

Defendants' motion to dismiss (ECF No. 12) is GRANTED in part as set out above.[5] Counts Three, Four, and Six are dismissed with leave to amend. ADD may file an amended complaint within fourteen days. If it does so, Defendants will have fourteen days to respond. If ADD declines to amend, Defendants must answer as to the remaining claims no later than 21 days from the date of this order.

SO ORDERED on July 20, 2026.

s/ *Allen Winsor*
Chief United States District Judge

---

[5] Defendants also argue there is no basis to seek attorneys' fees for Counts One, Two, Four, or Five. ECF No. 12 at 25-26. ADD has abandoned any request for fees under those counts. ECF No. 19 at 3 n.1 ("Plaintiff concedes that there is no statutory or contractual basis for the recovery of attorney's fees under these claims.").

14